Filed 5/14/24  P. v. Ware CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KENNETH WARE,<br><br>    Defendant and Appellant. | F085695<br><br>(Super. Ct. No. SUF18418)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 1994, a jury convicted appellant Kenneth Ware of first degree murder (Pen. Code,[1] § 187, subd. (a); count 1), conspiracy to commit murder (§§ 182, subd. (a)(1), 187, subd. (a); count 2), premeditated, willful, and deliberate attempted murder (§§ 664, 187, subd. (a); count 3), two counts of assault with a firearm on a peace officer (§ 245, subd. (d)(1); counts 4 & 5), two counts of robbery (§ 211; counts 6 & 7); and being a felon in possession of a firearm (former § 12021; count 8). As to counts 1 through 7, the jury found true enhancements for personal use of a firearm (former § 12022.5), and for a principal being armed with a firearm (§ 12022, subd. (a)(1)). The jury also found true allegations Ware suffered three prior serious felony convictions (§ 667, subd. (a)) and served three prior prison terms (§ 667.5, subd. (b)).

The trial court sentenced Ware to two consecutive indeterminate life terms of imprisonment plus a total determinate term of 35 years eight months. On direct appeal, we vacated Ware's sentence on count 8, but otherwise affirmed the judgment. (*People v. Ware* (Jul. 11, 1996, F022255) [nonpub. opn.].)

In 2021, Ware filed a petition for resentencing pursuant to section 1172.6,[2] contending he is entitled to relief because he was convicted of murder under the provocative act doctrine. The trial court denied the petition for failure to state a prima facie case.

Ware challenges the denial of his resentencing petition on three grounds. First, he claims he is entitled to resentencing based on his argument that Senate Bill No. 1437

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Ware brought the petition pursuant to former section 1170.95, which was renumbered as section 1172.6 without substantive change on June 30, 2022. (Stats. 2022, ch. 58, § 10, eff. Jun. 30, 2022.) For clarity, we refer to the statute by its current number throughout this opinion.

(2017-2018 Reg. Sess.) (Senate Bill No. 1437) abolished the provocative act doctrine. Next, he contends the jury instructions given in his trial allowed the jury to convict him of murder based on imputed malice. Finally, he argues that excluding those convicted of provocative act murder from relief under section 1172.6 violates equal protection.

We conclude the trial court did not err in denying the petition at the prima facie stage. We affirm.

## FACTUAL BACKGROUND[3]

"On December 21, 1993, [Ware] and Garrick robbed the Glendale Federal Savings Bank in downtown Merced, obtaining $7,764 and some checks. After exiting the bank the pair fled on foot toward a nearby convalescent home. Officer David Carlin was driving a marked squad car on patrol when he saw the two. Carlin immediately turned his vehicle in pursuit. Suddenly, they turned and ran toward him. Each of them drew his gun, raised his arm and fired directly at Carlin. One of them said, ' "Shoot the mother fucker." ' Carlin laid down in the front seat and returned fire. Since Carlin had lost sight of [Ware], he aimed at Garrick, who was struck twice.

"Together, the robbers ran toward the parking lot of a nearby Jack-in-the-Box restaurant. Officer Rod Dash pursued. He drew his gun and yelled, 'police officer, stop.' [Ware] slowed, but Garrick kept running. [Ware] turned toward Dash and pointed his gun at him. Dash fired one shot, hitting [Ware]. He immediately fell and was apprehended. A revolver was found on the ground nearby.

"Meanwhile, Officer Grieg Best had parked his vehicle nearby. Hearing the shots, he lay down between his car and its open door. Garrick ran by his car, pointing his gun at Best. Best fired three shots in response. Garrick was not hit

---

[3] This statement of facts is taken from our prior opinion, *People v. Ware, supra,* F022255. Ware notes that the factual summary in an appellate opinion in and of itself is not part of the record of conviction. (See *People v. Flores* (2022) 76 Cal.App.5th 974.) However, we include this statement of facts because it is an accurate summary of the clerk's and reporter's transcripts, which are part of the record of conviction. (See *People v. Lewis* (2021) 11 Cal.5th 952, 971-972 (*Lewis*); *People v. Ervin* (2021) 72 Cal.App.5th 90, 102.) In addition, the transcripts were submitted by the People in the trial court and are part of the instant appellate record.

3.

and continued running, eventually entering a nearby Burger King restaurant. Best followed Garrick inside. Garrick collapsed and was apprehended. A pistol was found in Garrick's waistband and the money bag containing the proceeds of the robbery was nearby. Garrick died soon thereafter as a result of his gunshot wounds." (*People v. Ware*, *supra*, F022255, fns. omitted.)

## PROCEDURAL BACKGROUND

In 2021, Ware filed a petition for resentencing pursuant to section 1172.6, claiming he is eligible for relief because his murder conviction was based on a police officer shooting his accomplice. The trial court appointed counsel to represent Ware.

The People filed an opposition to the petition contending Ware is ineligible for relief as a matter of law because he was convicted of provocative act murder. The People also submitted a copy of the record on appeal from Ware's trial for the court's review. This record, including the jury instructions given, shows Ware's murder liability was based on the provocative act doctrine.

The trial court held a hearing to determine whether Ware had made a prima facie case for relief pursuant to section 1172.6, subdivision (c). At the hearing, defense counsel noted there are four appellate cases holding that a murder conviction based on the provocative act doctrine is not eligible for resentencing under section 1172.6 because it does not involve the imputation of malice. (See *People v. Lee* (2020) 49 Cal.App.5th 254, 263-267 (*Lee I*)); *People v. Johnson* (2020) 57 Cal.App.5th 257, 266-268; *People v. Mancilla* (2021) 67 Cal.App.5th 854, 866-869 (*Mancilla*); *People v. Swanson* (2020) 57 Cal.App.5th 604, 612-618.) Defense counsel stated the argument could be made these cases were wrongly decided, but conceded the trial court was nonetheless bound by these authorities. The trial court agreed and denied the petition, stating: "At this point in time, should the higher courts ultimately change the analysis, the matter can be brought back before this Court. At this point, the Court is going to deny the petition for lack or for [want] of a prima facie case."

## DISCUSSION

### I.      Senate Bill No. 1437 and resentencing procedure under section 1172.6.

Murder is the unlawful killing of another with express or implied malice aforethought.  (§§ 187, subd. (a), 188; see *People v. Rangel* (2016) 62 Cal.4th 1192, 1220.)  Before the enactment of Senate Bill No. 1437, the felony murder rule and the natural and probable consequences doctrine provided exceptions to the requirement that the prosecution prove the defendant personally harbored malice.  (*People v. Lopez* (2023) 88 Cal.App.5th 566, 574.)  Under the old felony murder rule, a defendant could be liable for murder if their accomplice "kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony."  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654 (*Gonzalez*).)  "Under the natural and probable consequences doctrine as it existed before Senate Bill [No.] 1437, a person could be held liable not only for the crime they intend to commit with their confederate (the target crime), but also for any other offense (nontarget crime)—including murder—'committed by the confederate as a "natural and probable consequence" of the crime originally aided and abetted.' "  (*People v. Lopez, supra,* 88 Cal.App.5th at pp. 574-575.)  Neither of these theories of murder required proof of express or implied malice.  Instead, malice could be *imputed* to the defendant based on their willingness to participate in a crime.  (*Ibid*.)

Effective January 1, 2019, Senate Bill No. 1437 eliminated these exceptions.  (*People v. Curiel* (2023) 15 Cal.5th 433, 448-449.)  It amended the felony-murder rule to narrow the scope of murder liability for participants in the underlying felony who are not the actual killer.  (§ 189, subd. (e).)  Now, non-killer felony-murder liability is limited to those who "with the intent to kill, aided, abetted … or assisted the actual killer," or were "a major participant in the underlying felony and acted with reckless indifference to human life."  (§ 189, subd. (e)(1)-(3).)  In addition, Senate Bill No. 1437 eliminated the

natural and probable consequences doctrine by requiring that, except for felony-murder liability, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); see *People v. Gentile* (2020) 10 Cal.5th 830, 846-847.)

Senate Bill No. 1437 also added a procedure "for those convicted under the former law to seek retroactive relief under the law as amended." (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) Under section 1172.6, a petitioner must first file a petition containing a declaration that he or she is statutorily eligible for relief, including that he or she "could not presently be convicted of murder … because of changes to Section 188 or 189" effectuated by Senate Bill No. 1437. (§ 1172.6, subds. (a)(3), (b)(1); see *Strong, supra,* 13 Cal.5th at p. 708.)

Upon the filing of a facially sufficient petition, the court must appoint counsel, if requested. (§ 1172.6, subd. (b)(3); see *Lewis*, *supra,* 11 Cal.5th at p. 970.) The prosecutor must file a response to the petition, and the petitioner may file a reply. (§ 1172.6, subd. (c).) The court must then "hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Ibid.*) If the petitioner makes a prima facie showing, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d).) If the court denies the petition for failure to make a prima facie showing, it must explain its ruling in a statement of reasons. (§ 1172.6, subd. (c).)

In determining whether the petitioner has made a prima facie showing, the trial court may consider the "record of conviction" to "distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The record of conviction may include admissible trial evidence and jury instructions. (*People v. Ervin, supra,* 72 Cal.App.5th at p. 102; *People v. Lopez* (2022) 78 Cal.App.5th 1, 13.)

6.

"Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Conversely, "[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong, supra,* 13 Cal.5th at p. 708.)

The denial of a section 1172.6 petition at the prima facie stage is appropriate only if the petitioner is ineligible for relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 966.) This is a purely legal conclusion, which we review de novo. (*People v. Ervin, supra,* 72 Cal.App.5th at p. 101.)

## II.    The provocative act doctrine remains a valid theory of murder liability.

The trial court ruled that Ware was ineligible for resentencing as a matter of law because he was convicted of provocative act murder. Ware argues the opposite is true. He claims the provocative act doctrine necessarily involves the imputation of malice, and therefore he is entitled to relief due to the nature of his murder conviction. The direct implication of this argument, while not expressly stated by Ware, is that Senate Bill No. 1437 abolished the provocative act doctrine.

We disagree. Provocative act murder requires proof that the defendant personally harbored malice. (*Gonzalez*, *supra,* 54 Cal.4th at p. 655; *People v. Concha* (2009) 47 Cal.4th 653*,* 663 (*Concha*).) It remains a viable theory of murder following the enactment of Senate Bill No. 1437. Ware therefore fails to show he could no longer be convicted of murder under the provocative act doctrine because of changes in the law effectuated by Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).)

## A. The provocative act doctrine.

"Under the provocative act doctrine, when the perpetrator of a crime maliciously commits an act that is likely to result in death, and the victim kills in reasonable response to that act, the perpetrator is guilty of murder." (*Gonzalez, supra,* 54 Cal.4th at p. 655.) "The classic provocative act scenario occurs when a perpetrator of the underlying crime instigates a gun battle, usually by firing first, and a police officer, or victim of the underlying crime, responds with privileged lethal force by returning fire and kills the perpetrator's accomplice or, by inadvertence, an innocent bystander." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 602-603 (*Mejia*).)

Provocative act murder requires proof of both a physical and a mental element. (*People v. Briscoe* (2001) 92 Cal.App.4th 568, 582.) "The *physical* element is satisfied when the defendant, or a *surviving accomplice* in the underlying crime, commits an act, the natural and probable consequence of which is the use of deadly force by a third party." (*Mejia, supra,* 211 Cal.App.4th at p. 603.) "When the defendant or surviving accomplice acts in such a manner and the third party kills in response, the provocateur can be said to have proximately caused the resulting death notwithstanding the intervening use of deadly force by the third party." (*Ibid*.) "With respect to the *mental* element of provocative act murder, a defendant cannot be vicariously liable; he must personally possess the requisite mental state of malice aforethought when he either causes the death through his provocative act or aids and abets in the underlying crime the provocateur who causes the death." (*Ibid*.) In short, "[t]he defendant or an accomplice must proximately cause an unlawful death, and the defendant must personally act with malice." (*Concha, supra,* 47 Cal.4th at p. 663.)

Unlike the former felony-murder rule and the natural and probable consequences doctrine, provocative act murder does not involve the imputation of malice based on

8.

involvement in an underlying crime. (*Lee I, supra*, 49 Cal.App.5th at p. 264.) Rather, "[a] murder conviction under the provocative act doctrine ... requires proof that the defendant personally harbored the mental state of malice." (*Gonzalez, supra*, 54 Cal.4th at p. 655, see *Concha, supra,* 47 Cal.4th at p. 663.)

## B. Senate Bill No. 1437 did not abolish the provocative act doctrine. Appellant is not entitled to relief on this basis.

Based on the above principles, we reject Ware's assertion that the provocative act doctrine is "a way of imputing malice." A provocative act murder conviction requires proof that the defendant personally harbored malice. Thus, the provocative act doctrine does not conflict with section 188, subdivision (a)(3), as amended by Senate Bill No. 1437, because it does not impute malice "to a person based solely on his or her participation in a crime."

Numerous appellate opinions issued since the enactment of Senate Bill No. 1437 have reached the same conclusion on this line of reasoning. (See *Lee I, supra,* 49 Cal.App.5th at pp. 263-267; *People v. Johnson, supra,* 57 Cal.App.5th at pp. 266-268; *Mancilla, supra,* 67 Cal.App.5th at p. 867; *People v. Swanson, supra,* 57 Cal.App.5th at pp. 612-617; *People v. Flores* (2023) 96 Cal.App.5th 1164, 1172; *People v. Antonelli* (2023) 93 Cal.App.5th 712, review granted Oct. 18, 2023, S281599.) Ware cites no contrary authority. We join these courts in concluding that the provocative act doctrine remains a valid theory of murder liability.[4]

---

[4] To be clear, we do not hold that Ware is categorically excluded from section 1172.6 resentencing solely because he was convicted of provocative act murder. We only conclude that the provocative act doctrine remains a valid theory of murder liability, and as we discuss below, the jury instructions given *in this case* foreclose the possibility that Ware's murder conviction was based on imputed malice.

9.

Ware briefly contends that maintaining provocative act doctrine is contrary to the purpose of Senate Bill No. 1437, because it imposes murder liability on a non-killer who did not intend to kill the ultimate homicide victim. To the extent Ware raises a statutory construction claim, we reject it. " 'When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls.' " (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1131.) As we have explained, the plain language of sections 188 and 189, as amended by Senate Bill No. 1437, do not invalidate the provocative act doctrine.

Ware does not point to any legislative history supporting a contrary interpretation. In fact, in enacting Senate Bill No. 1437, the Legislature expressly found that, except for under the felony-murder rule as set forth in amended section 189, "a conviction for murder requires that a person act with malice aforethought." (Stats. 2018, ch. 1015, § 1(g).) Reading Senate Bill No. 1437 as also abolishing the provocative act doctrine, a theory of murder that requires the defendant personally harbor malice, would be inconsistent with this clear statement of legislative intent.

In sum, to make a prima facie case for relief under section 1172.6, Ware must show that he "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189" effectuated by Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).) As we have explained, Senate Bill No. 1437 did not abolish the provocative act doctrine -- Ware could still be convicted of provocative act murder under current law. Accordingly, the trial court was not obligated to find Ware made a prima facie showing solely because he was convicted of provocative act murder.

III.    **The record of conviction conclusively demonstrates Ware's murder conviction was not based on imputed malice.**

Ware contends the jury instructions given in his trial allowed the jury to convict him of murder based on imputed malice, and thus, the trial court erred in dismissing his

petition for failure to state a prima facie case. We reject this claim because the jury instructions expressly required a finding that Ware performed a provocative act with the mental state of malice. Nothing Ware points to in the instructions undermined that requirement. Accordingly, the record of conviction conclusively demonstrates Ware's conviction was based on the still-valid theory of murder liability.[5] (§ 1172.6, subd. (a)(3).)

### A. Background

Prior to the prima facie hearing, the People submitted discs containing the record on appeal from Ware's trial. The discs included electronic copies of the clerk's transcript and the reporter's transcript.[6]

As pertinent here, the transcripts show the jury was given CALJIC No. 8.10 (Murder-Defined), CALJIC No. 8.11 ("Malice Aforethought" – Defined), CALJIC No. 8.12 (Murder- Killer Other Than Perpetrator of Underlying Crime), CALJIC No. 8.20 (Deliberate and Premeditated Murder), and CALJIC No. 8.31 (Second Degree Murder – Killing Resulting from Unlawful Act Dangerous to Life). Notably, the jury was not instructed on felony murder, the natural and probable consequences doctrine, or any other theory of murder liability.

CALJIC No. 8.12, which set forth the elements of provocative act murder, was given as follows:

---

[5] Because we conclude the jury instructions show Ware is not entitled to resentencing under section 1172.6, we need not address respondent's contention that Ware's instructional claims fall outside the scope of section 1172.6, because they are not based on legislative changes effectuated by Senate Bill No. 1437.

[6] We granted Ware's request to augment the record with the discs containing the record on appeal. (See Cal. Rules of Court, rule 8.340(b).)

"Defendant is accused in Count 1 of the Information of having committed the crime of Murder, a violation of Penal Code section 187.

"Every person who unlawfully kills a human being with malice aforethought is guilty of the crime of Murder in violation of Section 187 of the Penal Code.

"A killing committed during the commission of a crime by a person who is not a perpetrator of such crime, in a reasonable response to an intentional provocative act by the defendant, is considered in law to be an unlawful killing by the defendant.  Malice is implied when the provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life.  A provocative act is an act which has a high probability of eliciting a life-threatening response from the person who commits the killing.

" 'Aforethought' does not imply deliberation or the lapse of considerable time.  It only means that the required mental state must precede rather than follow the provocative act.

"In order to prove murder by a provocative act occurring during the commission of a Robbery, each of the following elements must be proved:

"1. The crime of Robbery was committed by the defendant;

"2. During the commission of such crime, the defendant also intentionally committed a provocative act;

"3. The provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life;

"4. Such act was sufficiently provocative that a peace officer in a reasonable response thereto killed a perpetrator of such crime;

"5. The life threatening act must be something beyond the underlying felony itself, namely, Robbery, and must be a proximate cause of death.

"Where the defendant has undertaken to commit attempted murder or conspiracy to commit murder each of which involves an intent to kill,

12.

that constitutes a 'provocative act' in and of itself, and there is no need that a separate and independent 'provocative act' be committed.

"Where the defendant has undertaken to commit an assault with a firearm, under circumstances showing a conscious disregard for life and likely to cause death, that constitutes a 'provocative act' in and of itself, and there is no need that a separate and independent 'provocative act' be committed.

"Murder, which occurs during the commission of the crime of Robbery, when there was in the mind of the perpetrator of such crime, the specific intent to commit Robbery, is murder of the first degree.

"If you find that the murder is not committed in the course of a Robbery, it is murder in the second degree."

### B. The jury instructions did not allow Ware to be convicted of murder based on imputed malice.

Ware claims that several aspects of the jury instructions allowed the jury to impute malice from the conduct of Garrick, his accomplice and the decedent.

First, Ware notes that the jury was instructed in CALJIC No. 8.12 that certain acts, including attempted murder, conspiracy to commit murder, and assault with a firearm under circumstances showing a conscious disregard for life and likely to cause death, necessarily constitute provocative acts. He contends this allowed the jury to impute malice based on his involvement in other crimes.

We fail to see how this language allowed the jury to convict Ware of murder based on imputed malice. Rather, it clarified that these offenses necessarily constituted provocative acts, because they either "require[d] an intent to kill," or were "beyond that necessary to simply commit the [underlying] crime." (*Mejia, supra,* 211 Cal.App.4th at p. 604.) Nothing in this language suggested the jury could convict Ware of murder without finding he personally harbored malice.

13.

Next, Ware points to language in the CALJIC No. 8.12 instruction stating that Ware is guilty of first degree murder if the murder occurred during the commission of robbery, and Ware had the specific intent to commit robbery. Contrary to Ware's assertion, this portion of the instruction did not invite the jury to impose murder liability based on the felony-murder rule. Rather, it only pertained to the jury's determination of degree of murder. "[A] provocative act murder of the second degree can be elevated to first degree murder when it occurs 'during the course of a felony enumerated in section 189 that would support a first degree felony-murder conviction.' " (*People v. Swanson, supra,* 57 Cal.App.5th at p. 616, quoting *People v. Sanchez* (2001) 26 Cal.4th 834, 852.) Nothing in this portion of the instruction directed the jury to impute malice based solely on Ware's involvement in another crime.

In his reply brief, Ware challenges the CALJIC No. 8.12 instruction based on the recently issued opinion in *People v. Lee* (2023) 95 Cal.App.5th 1164 (*Lee II*). The defendant in *Lee II* was tried in 1994 and was convicted of provocative act murder. (*Id.* at p. 1169.) The trial court denied the defendant's section 1172.6 petition at the prima facie stage, finding he was ineligible for resentencing as a matter of law. (*Lee II,* at p. 1173.) On appeal, the court observed that, prior to the Supreme Court's opinion in *Concha*, issued in 2009, "case law imposed culpability on all perpetrators of the underlying crime so long as the provocateur acted with malice, and did so in furtherance of the common criminal design." (*Lee II,* at p. 1182.) It was not until *Concha* that the Supreme Court specified that provocative act murder requires proof that each defendant personally harbored malice. (*Concha, supra,* 47 Cal.4th at p. 663.) Therefore, prior to 2009, "a defendant could be convicted of provocative act murder based on the malicious and provocative acts of his confederates, without a showing that the defendant himself harbored malice." (*Lee II,* at p. 1178.)

14.

*Lee II* then noted that the jury instructions given in the defendant's trial did not necessarily require the jury find that he personally harbored malice. (*Lee II*, *supra*, 95 Cal.App.5th at p. 1182.) Instead, the jury was instructed the malice element was satisfied if "[the] defendant *or another surviving perpetrator* … intentionally committed a provocative life-threatening act," and such act was "deliberately performed with knowledge of the danger to and with conscious disregard for human life." (*Id.* at p. 1183.) Based on this instruction, the court concluded it is conceivable the jury found defendant guilty of murder based solely on the malicious conduct of an accomplice.[7] (*Ibid.*)

Here, Ware was also tried in 1994. However, unlike in *Lee II*, the jury was instructed that to find Ware guilty of provocative act murder, it must find that he "intentionally committed a provocative act" and did so "with knowledge of the danger to and with conscious disregard for human life." In other words, the jury necessarily had to find that Ware personally harbored malice to convict him of murder. Therefore, this instruction comported with the current law of homicide, as amended by Senate Bill No. 1437, because it did not allow the jury to impute malice based solely on his participation in a crime.

Despite his reliance on *Lee II*, Ware concedes that the instructions in his trial did not suffer from the same deficiencies. However, he notes that the jury was instructed in former CALJIC No. 3.00 (Principals – Defined), that "[t]hose who directly and actively" commit a crime are "equally guilty" to "[t]hose who aid and abet" the commission of a crime.

---

[7] The instructional issue addressed in *Lee II* is currently under review in the Supreme Court in *People v. Antonelli, supra,* 93 Cal.App.5th 712.

15.

Ware does not articulate how this instruction suggested Ware could be found guilty of murder based on imputed malice, and we see no basis to conclude that it did. The "equally guilty" language in former CALJIC No. 3.00 "generally state[s] a correct rule of law," but has been criticized because it "could be misleading if the principals in a particular case might be guilty of different crimes and the jury interprets the instruction to preclude such a finding."[8] (*People v. Bryant, Smith and Wheeler* (2016) 60 Cal.4th 335, 433.) This criticism of former CALJIC No. 3.00 is irrelevant here because Ware was the only defendant on trial, and the jury was plainly instructed that Ware's murder liability must be based on his personal mental state.

Finally, Ware argues that our prior opinion on direct appeal shows we previously found the jury instructions allowed the jury to convict Ware based on the acts of the decedent. Ware is mistaken. In the prior appeal, Ware contended the jury instructions improperly allowed the jury to consider the decedent's provocative acts in determining whether Ware's conduct was sufficiently provocative. (*People v. Ware, supra,* F022255.) Without addressing the merits of this claim, we concluded that any presumed instructional error was harmless. Based on the jury's finding of guilt on the conspiracy to commit murder charge (count 2), we reasoned the jury necessarily found Ware committed certain acts that were sufficiently provocative to sustain the jury's murder verdict as a matter of law.

Contrary to Ware's assertion, we did not conclude that the instructions erroneously allowed the jury to consider the provocative acts. Regardless, his prior instructional error claim is irrelevant to the issues presented here. Ware claimed the instructions allowed the jury to rely on the decedent's provocative acts alone to conclude the *physical element* of

---

[8] Former CALJIC No. 3.00 was modified in 2010 to make the "equally guilty" language optional. (See *People v. Johnson* (2016) 62 Cal.4th 600, 640, fn. 5.)

provocative act murder had been satisfied. His argument had nothing to do with evidence of his mental state or the imputation of malice.

To conclude, nothing in the jury instructions stated or implied that Ware could be convicted of murder based on imputed malice. Ware fails to show the jury could have found him guilty based on a theory of murder rendered invalid by Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).) Therefore, our de novo review reveals Ware failed to state a prima facie case for relief, and the trial court did not err in denying his resentencing petition.

**IV.** **Exclusion of offenders convicted of provocative act murder from resentencing under section 1172.6 does not violate equal protection.**

Ware claims the exclusion of those convicted of murder under the provocative act doctrine from relief under section 1172.6 violates equal protection. We are not persuaded.

An equal protection claim requires a showing the state has adopted a classification that affects similarly situated groups in an unequal manner. (*People v. Guzman* (2005) 35 Cal.4th 577, 591-592.) "This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.'" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)

Ware's equal protection claim is premised on his assertion that provocative act murder involves imputed malice. Thus, he contends that offenders convicted of provocative act murder are similarly situated to those convicted of murder under the old felony-murder rule and the natural and probable consequences doctrine. But as we explained above, provocative act murder requires proof that the defendant personally harbored malice. (*Gonzalez, supra*, 54 Cal.4th at p. 655, see *Concha, supra,* 47 Cal.4th at p. 663.) Unlike the old felony-murder rule and the natural and probable consequences

17.

doctrine, it does not allow for the imputation of malice. (*Lee I, supra*, 49 Cal.App.5th at p. 264.)

In *Mancilla*, the court rejected the same equal protection claim Ware raises here, stating: "Given the express intent of Senate Bill [No.] 1437 'to more equitably sentence offenders in accordance with their involvement in homicides' [citations], offenders who acted with malice and those who did not are not similarly situated for purposes of section [1172.6]." (*Mancilla, supra,* 67 Cal.App.5th at p. 870.) We agree with *Mancilla*'s reasoning. Accordingly, Ware fails to make the initial showing that the two groups of offenders are similarly situated, and this claim lacks merit.

## DISPOSITION

The judgment is affirmed.

SMITH, J.

WE CONCUR:

PEÑA, Acting P. J.

DE SANTOS, J.